**BACHELOR LAND HOLDINGS, LLC,**                                       **PLAINTIFF**

**V.**

**CHUBB CUSTOM INSURANCE CO.**                                    **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the Court upon the parties' motions for summary judgment. Plaintiff Bachelor Land Holdings moved for summary judgment (DN 10). Defendant Chubb Custom Insurance responded and filed its cross motion for summary judgment (DN 11). Plaintiff replied in support of its own motion and responded to Defendant's (DN 12). Finally, Defendant replied in support of its own motion (DN 13). Fully briefed, this matter is now ripe for adjudication. For the following reasons, Plaintiff's motion (DN 10) is DENIED and Defendant's motion (DN 11) is GRANTED.

## BACKGROUND

This declaratory judgment action arises out of a loss to property at the Hilliard Lyons Center at 501 South Fourth Street in Louisville, Kentucky. The property, owned by Plaintiff Bachelor Land Holdings, LLC ("Bachelor"), sustained water damage when a sprinkler head in the building's fire protection system apparently malfunctioned. Prior to the property loss, Bachelor purchased Building and Personal Property Coverage (the "Policy") from Defendant Chubb Custom Insurance ("Chubb"). The Policy provides that "[Chubb] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The Policy, which has a limit of liability per occurrence of $12 million, was in effect at the time the loss occurred.

The Policy contains the following provisions:

E. Loss Conditions

. . .

2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request the selection to be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
. . .

7. Valuation

We will determine the value of Covered Property in the event of loss or damage as follows:

a. At actual cash value as of the time of loss or damage . . .
. . .

F. Additional Conditions

1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

. . .

G. Optional Coverages

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. Agreed Value

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown in the Declarations.
. . .

The Policy also contains the following endorsement:

OCCURRENCE LIMIT OF LIABILITY

This endorsement modifies Insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE

It is understood and agreed that the following special terms and conditions apply to this policy:

1. The Limit of Liability $12,000,000.00, is a limit of amount per occurrence. Notwithstanding anything to the contrary contained herein, in no event shall the liability of this Company exceed this limit or amount in one disaster, casualty, or event, irrespective of the number of locations involved.

2. The premium for this policy is based upon the Statement of Values on file with the Company, or attached to this policy. In the event of loss hereunder, liability of the Company shall be limited to the least of the following:

a) the actual adjusted amount of loss, less applicable deductible(s);

b) the total, stated value for the property involved, as shown on the latest Statement of Values on file with the Company, less applicable deductible(s);

>c) the Limit of Liability or amount of insurance shown on the face of this policy or endorsed on this policy.

All other terms and conditions of the policy remain unchanged.

Bachelor filed a claim with Chubb notifying it of the property loss. After investigating the claim, Chubb determined the loss was covered under the Policy and paid Bachelor $932,118.00 in advancements for the loss. By letter dated August 19, 2010, Chubb advised Bachelor that it believed the actual cash value of the loss was $1,388,800.00. Chubb also advised Bachelor that the Coinsurance provision of the Policy would be applicable to the loss. According to Chubb, the Coinsurance provision applied to Bachelor's loss because the $14,229,252 actual cash value of the building, as determined in a report prepared by GAB Robins, exceeded the Coinsurance value of $12,000,0000. Applying the Coinsurance provision and the applicable deductible, Chubb informed Bachelor that it owed a remaining $229,474.00 to Bachelor under the Policy. Chubb forwarded a check to Bachelor for this amount on August 30, 2010.

Bachelor, in disagreement with the GAB Robins assessment of the actual cash value of the property as well as the value of the loss, invoked the Appraisal Clause of the Policy. Bachelor's chosen appraiser, Rich Michelson, and Chubb's chosen appraiser, W.L. Hall of L.J. Shaw & Co., submitted their assessments to the Umpire, former Jefferson Circuit Court Judge Ken Corey. Judge Corey agreed with Appraiser Hall's appraisal. The Appraisal Award stated that (1) the replacement cost value of the property was $63,356,538.07; (2) the actual cash value of the property was $15,839,134.52; (3) the loss replacement cost was $1,802,085.08; and (4) the actual cash value of the loss was $1,195,642.95.

Bachelor then filed this declaratory judgment action to determine the rights and liabilities of the parties with respect to the Policy. First, Bachelor seeks a determination

that the appraisers cannot interpret the Policy and apply the Coinsurance Penalty Provision during the appraisal process. Second, Bachelor seeks a determination that the Coinsurance provision is not incorporated into the Policy and is not applicable to Bachelor's loss. In support of this contention, Bachelor states that the Coinsurance percentage is not stated in the Declarations, that the Occurrence Limit of Liability endorsement (OLLE) controls the method of determining Chubb's liability, and that the policy adopts the agreed value provision precluding application of the Coinsurance provision.

Chubb, in its own motion, asks the Court to conclude that the Coinsurance provision is applicable to the loss at issue; that the OLLE does not preclude application of the Coinsurance provision; that the Appraisal Award concluded that the value of the Covered Property exceeded the limits of insurance, requiring application of the Coinsurance provision; and that the Agreed Value provision does not apply to this loss.

**STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere

scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal Rule of Civil Procedure 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

Based on the parties' briefs, the two ultimate issues in this case are (1) whether the appraisers exceeded their authority in the appraisal process, and (2) whether the Coinsurance provision applies to Bachelor's loss. Each of these issues will be addressed by the Court. Because each issue requires the Court to interpret the provisions of the insurance policy in this case, the Court begins its analysis by reviewing the rules used by Kentucky courts to interpret insurance policies. The Court will then apply these rules to the issues outlined above.

### I. Rules of Interpretation Applied to Kentucky Insurance Policies.

The Court has jurisdiction to hear this case because the parties are completely diverse. *See* 28 U.S.C. § 1332. When sitting in diversity, federal district courts are required to apply the substantive law of the states in which they sit. *See Erie Railroad v. Tompkins*, 304 U.S. 64 (1938). The present case involves the interpretation of a contract of insurance, and the

interpretation of contracts is a matter of state law. *See Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). Accordingly, the Court will apply the rules used by Kentucky courts to interpret and give meaning to insurance policies in Kentucky.

The first rule of interpretation is that "[a] policy of insurance is to be construed liberally in favor of the insured . . . ." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994). The second rule is that where the terms of the policy are not ambiguous, their ordinary meaning will govern. "[W]here not ambiguous, the ordinary meaning of the words chosen by the insurer is to be followed." *James Graham Brown Found. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) (citing *Washington Nat'l Ins. Co. v. Burke*, 258 S.W.2d 709 (Ky. 1953)). "[A]n insurance contract must be construed without disregarding or inserting words or clauses and seeming contradictions should be harmonized if reasonably possible." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82. S.W.3d 869, 875-76 (Ky. 2002) (quotation omitted). "[I]n the absence of ambiguities . . . the terms of an insurance policy will be enforced as drawn." *Hendrix v. Fireman's Fund Ins. Co.*, 823 S.W.2d 937 (Ky. App. 1991) (citations omitted). Unless the terms in the contract have acquired a technical meaning, they "must be interpreted according to the usage of the average man . . . ." *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205 (Ky. 1986).

The third rule of interpretation is that the Court cannot apply the "ordinary meaning" of the terms if they are ambiguous. "An insurance policy is ambiguous only when the provision to be construed is reasonably susceptible of more than one meaning." *Foster v. Ky. Hous. Corp.*, 850 F.Supp. 558, 561 (E.D. Ky. 1994) (citation omitted). If an ambiguous term or provision is subject to two potential interpretations, "one favorable to the insured and the other favorable to the insurer, then former will be adopted." *Powell-Walton-Milward, Inc.*, 870 S.W.2d at 227

(citing *Koch v. Ocean Accident & Guar. Corp.*, 230 S.W.2d 893 (Ky. 1950)). The prevailing rule is that "uncertainties and ambiguities must be resolved in favor of the insured." *Fryman*, 704 S.W.2d at 206 (citing *Donohue v. Washington Nat'l Ins. Co.*, 82 S.W.2d 780 (Ky. 1935)).

If the Court finds that the provisions or terms in the policy at issue are ambiguous, the Court will resolve the ambiguity by applying the "reasonable expectations doctrine." "Only actual ambiguities, not fanciful ones, will trigger application of the doctrine." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). "Under the 'doctrine of reasonable expectations,' an insured is entitled to all the coverage he may reasonably expect to be provided according to the terms of the policy." *Hendrix*, 823 S.W.2d at 938 (citing *Woodson v. Manhattan Life Ins. Co.*, 743 S.W.2d 835, 839 (Ky. 1987)). "The reasonable expectations doctrine is based on the premise that policy language will be construed as laymen would understand it. . . . [T]he ambiguous terms should be interpreted in favor of the insured's reasonable expectations." *True*, 99 S.W.3d at 443.

## II. The Authority of the Appraisers

Bachelor asserts that the appraisers cannot interpret the Policy and apply the Coinsurance Penalty Provision during the appraisal process. Chubb agrees with this statement but insists that the appraisers did not use the Coinsurance provision during the appraisal process. The Appraisal provision of the Policy states that "[t]he appraisers will state separately the value of the property and amount of loss." Based on the plain language of that provision, the authority of the appraisers is limited to (1) stating the value of the property, and (2) stating the value of the loss. Here, it appears that the appraisers did just that. In fact, the Umpire stated in his decision that there was "no consideration for deductibles, credits, nor coinsurance…." Umpire Decision, DN 11-4, at 1. The Appraisal Award further clarified that, "In short this is value and damages only." *Id.* at 3. Accordingly, the appraisers did not use or consider the Coinsurance provision in the appraisal process.

Bachelor further posits that the appraisers do not have the authority to determine the value of the Covered Property for Coinsurance purposes. Specifically, the Appraisal provision uses the term "value of the property" instead of "value of the Covered Property" as is used in the Coinsurance provision. However, it is unclear what Bachelor claims the appraisers were authorized to do. Bachelor first argues that the appraisers were only authorized to provide a *post-loss* property valuation. Bachelor later argues that the appraisers were only authorized to provide the value of the property *affected by the loss* and not the value of the Covered Property as a whole.

A reading of the Policy as a whole mandates a conclusion that the appraisers were authorized to determine the value of the building located at 501 S. Fourth Street as of the time of loss. To determine whether the Coinsurance penalty is applicable to a loss, it is necessary to determine the value of the Covered Property at the time of loss. "Covered Property" is a defined term in the Policy. It means "the type of property described in this section A.1., and limited in A.2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property." DN 10-3. The Declarations form, in the section for Description of Premises, states "See Location Schedule Attached." DN 11-2. The Location Schedule lists only the building located at 501 S. Fourth Street. DN 10-15. Therefore, the building at 501 S. Fourth Street is a "Covered Property." Furthermore, since that building is the only property listed in the Declarations, it is the only Covered Property. Because the building at 501 S. Fourth Street is the only building which is a Covered Property, it is therefore necessary to determine the value of the building at 501 S. Fourth Street at the time of loss.[1]

---

[1] The Policy provides three examples of the application of the Coinsurance provision. In the third example, the Limit of Insurance applies to two separate properties. To determine the value of the Covered Property, the values of the separate properties are added together. The coinsurance percentage is then multiplied by that sum to determine

Having established that the value of the building located at 501 S. Fourth Street must necessarily be determined, the Court will now turn its attention to the proper role of the appraisers as provided in the Appraisal provision. The Appraisal provision, invoked if the parties do not agree on the value of the property or the value of the loss, gives the appraisers the authority to determine the "value of the property." Firstly, the Court finds that the only reasonable interpretation is that the "property" referred to in the Appraisal Provision is the building located at 501 S. Fourth Street. That building is where the loss occurred and is the property affected by the loss. Additionally, because it is the only property covered by the Policy, there is no other property to which the Appraisal provision could refer.[2] Secondly, reading the Appraisal provision together with the rest of the Policy, the Court finds that the valuation of the

---

if the Coinsurance penalty is applicable to the loss. Accordingly, this example makes clear that the value of the Covered Property as a whole is equal to the sum of its parts, or the sum of the values of the separate properties.

Example #3
When: The value of the property is:
| | |
|---|---|
| Building at Location #1 | $75,000 |
| Building at Location #2 | $100,000 |
| Personal Property at Location #2 | $75,000 |
| | $250,000 |

| | |
|---|---|
| The Coinsurance percentage For it is: | 90% |
| The Limit of Insurance for Buildings and Personal Property At Locations #1 and #2 is: | $180,000 |
| The Deductible is: | $1,000 |
| The amount of loss is: | |
| Building at Location #2 | $30,000 |
| Personal Property at Location #2: | $20,000 |
| | $50,000 |

Step (1): $250,000 x 90% = $225,000
Step (2): $180,000 ÷ $225,000 = .80
Step (3): $50,000 x .80 = $40,000
Step (4): $40,000 - $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

---

[2] It is not clear whether Bachelor claims that the appraisers were only authorized to appraise the value of a portion of the property located at 501 S. Fourth Street. To the extent that this is asserted by Bachelor, the Policy does not support the contention that the property is somehow divisible in the event of property loss.

property is to be as of the time of loss. Pursuant to the terms of the Policy, in the event of loss, the Covered Property is valued as of the time of loss. It follows that, because the building at 501 S. Fourth Street is a Covered Property, it is valued as of the time of loss. Therefore, the appraisers are authorized to determine the value of the property, which, by the terms of the Policy, is to be determined as of the time of loss. The Appraisal provision is not susceptible to any other interpretation. "[A]n insurance contract must be construed without disregarding or inserting words or clauses and seeming contradictions should be harmonized if reasonably possible." *Kemper Nat'l,* 82. S.W.3d at 875-76. If the authority of the appraisers were limited to determining the value of the property after the loss, or the value of a portion of the property, the Policy would have so provided. The Court will not insert those words into the Appraisal provision while disregarding the remainder of the Policy.[3]

Accordingly, the appraisers were authorized to determine the value of the building located at 501 S. Fourth Street as of the time of loss. This is the determination made by the appraisers and stated in the Appraisal Award. Because the 501 S. Fourth Street building is the only property which constitutes the "Covered Property," it follows that the value of the Covered Property at the time of loss is equal to the value of the building located at 501 S. Fourth Street at the time of loss. However, the Appraisal Award did not take this next step and state the value of Covered Property or whether the Coinsurance penalty would be applicable to the loss. Therefore, the appraisers did not exceed their authority. Knowing the value of the Covered Property at the time of loss, the parties could then determine themselves whether the Coinsurance penalty is applicable to the loss.

"Generally, a court will not interfere with an appraisal award but, to the contrary, will

---

[3] Additionally, an interpretation that the appraisers could only determine the value of the property after the loss would be nonsensical as such a determination would neither be helpful to a calculation of the loss nor to determining the applicability of any other provision of the Policy.

indulge in every reasonable presumption to sustain it in the absence of fraud, mistake, or malfeasance. A court will not substitute its judgment for that of the appraisers or set aside an award for inadequacy or excessiveness unless it is so palpably wrong as to indicate corruption or bias on the part of the appraisers." *Lakewood Manufacturing Co. v. Home Insurance Co. of New York*, 422 F.2d 796, 798 (6th Cir. 1970. Here, there is no suggestion or evidence of fraud or malfeasance. Additionally, the Court has determined that it was not a mistake for the appraisers to determine the replacement value (RV) and actual cash value (ACV) of the building located at 501 S. Fourth Street. Accordingly, the Court declines to interfere with the Appraisal Award and, pursuant to the plain terms of the Policy, the parties are bound to its determinations.[4]

### III. Applicability of the Coinsurance Penalty to Bachelor's Loss

Bachelor next contends that the Coinsurance provision does not apply to the loss because the Coinsurance provision is not incorporated into the Policy. In support of this contention, Bachelor offers three separate reasons: (1) the Declarations does not show a coinsurance percentage; (2) the OLLE controls the method of determining payments for losses and does not mention coinsurance; and (3) the Policy adopts the Agreed Value provision making the Coinsurance provision inapplicable. The Court will address each of these arguments in turn.

#### a. Incorporation of the Location Schedule into the Declarations

The Coinsurance provision states that its conditions apply if a Coinsurance percentage is shown in the Declarations. The Declarations form, under "Coverages Provided," states "See Location Schedule Attached." On the Location Schedule, it shows the Coinsurance percentage as 100% at a value of $12,000,000. Bachelor argues the Declarations form merely refers to the Location Schedule and does not incorporate it. Therefore, Bachelor claims, the Coinsurance

---

[4] The Court is aware that Chubb's liability based on the actual cash value of the property as determined by the Appraisal Award will be less than the amount already advanced by Chubb. However, the amount advanced by Chubb was based on Chubb's valuation of the property and the loss prior to the invocation of the Appraisal process. Because Bachelor invoked the Appraisal process, it is now bound to the determinations of the Appraisal Award and cannot seek its avoidance merely because it stands in a worse position than before.

percentage is not shown in the Declarations and the Coinsurance provision is not incorporated into the Policy. Chubb responds that the Location Schedule was incorporated by reference and applies to Bachelor's loss.

Kentucky recognizes the doctrine of incorporation by reference as it applies to insurance contracts. *See Twin City Fire Ins. Co. v. Terry*, 472 S.W.2d 248 (Ky. 1971). "Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument. The incorporated matter is to be interpreted as part of the writing." 11 Williston on Contracts § 30:25 (4th ed. 2011). Here, the "Coverages Provided" section of the Declarations clearly and unequivocally refers to and incorporates the Location Schedule.[5] Therefore, the Location Schedule is a part of the Declarations and a coinsurance percentage is shown in the Declarations. Bachelor's argument that the Policy failed to follow the explicit instructions of the Coinsurance provision has no merit. That one must look to an incorporated writing to find the coinsurance percentage does not make the writing ambiguous. Accordingly, the Coinsurance provision was incorporated into the Policy.

    **b. Occurrence Limit of Liability Endorsement**

The Occurrence Limit of Liability Endorsement modifies the Commercial Property Coverage Part, which defines the amount to be paid for a loss. Bachelor contends that the OLLE controls the method Chubb must employ when making payment to Bachelor for a loss to Covered Property. Because the OLLE does not say that Coinsurance applies to payment for a loss, Bachelor claims the Coinsurance

---

[5] Notably, Bachelor does not argue that it was not provided with the Location Schedule. In Twin City, the Court found a document not properly incorporated by reference because the insurer failed to provide that document to the insured. Accordingly, there was nothing to put the insured on notice or to inquire as to its contents.

provision is not incorporated into the Policy.[6]  Chubb counters that the OLLE merely provides a ceiling or absolute limit of liability Chubb will pay for each occurrence, and does not negate the Coinsurance provision of the Policy.

The language of the OLLE is unambiguous and must therefore be given its ordinary meaning. The OLLE states that, "In the event of loss hereunder, liability of the Company shall be limited to the least of the following: (a) the actual adjusted amount of loss, less applicable deductible(s); (b) the total stated value for the property involved, as shown on the latest Statement of Values on file with the Company, less applicable deductible(s); (c) the Limit of Liability or amount of Insurance shown on the face of this policy or endorsed on this policy." By its plain language, the OLLE neither provides *the method* with which Chubb's liability in any occurrence will be calculated nor states what Chubb's liability *will be* in the event of a loss. Instead, it merely provides a ceiling of liability for each occurrence.

In construing an insurance policy, the Court must read the policy as a whole. *Sun Life Ins. Co. v. Taylor*, 56 S.W. 668 (1900). The policy and the endorsement together constitute the contract of insurance and must be read together to determine the contract intended by the parties. Importantly, the OLLE provides that "All other terms and conditions of this policy remain unchanged." The Coinsurance provision can be read together with the OLLE as neither provision contradicts the other. The Coinsurance provision is relevant to a determination of what Chubb's liability *will be* with respect to a particular occurrence. The OLLE provides a limit that Chubb's liability may not exceed with respect to any occurrence. These are two distinct determinations and do not constitute an ambiguity. The OLLE is not reasonably susceptible to Bachelor's interpretation and the Court declines to read an ambiguity into the Policy. Accordingly, the OLLE merely provides limits of liability and does not preclude application of the Coinsurance provision.

    c. **Adoption of the Agreed Value Provision**

---

[6] Bachelor also argued that because the Policy did not incorporate the Coinsurance Penalty Provision in the Declarations page, then the OLLE does not adopt the Coinsurance Penalty Provision. Having already determined that the Policy did incorporate the Coinsurance provision, the Court will not address this argument.

Lastly, Bachelor asserts that the if the Court determines the Policy does include the Coinsurance provision, Coinsurance is still inapplicable to Bachelor's loss because the Policy adopts the Agreed Value provision. In support of this contention, Bachelor points to the following: (1) the $12,000,000 predetermined agreed value of the Covered Property which is set forth in the "Statement of Values;" (2) the terms and conditions of the OLLE which provide that "the premium for this policy is based upon the Statement of Values on file with the Company, or attached to this policy;" (3) the OLLE which provides that the limits of liability will be $12,000,000; and (4) the terms and conditions of the Location Schedule which states that the Value of the Insured Premises is $12,000,000. Chubb counters that Agreed Value is an optional coverage that was not purchased by Bachelor.

The Agreed Value provision applies "if shown as applicable in the Declarations." The Declarations form, under the "Optional Coverages" section, does not show that the Agreed Value optional coverage is applicable. Additionally, unlike with the Coinsurance Provision, there is no reference to another document under the Optional Coverages section. Even if the Location Schedule were also incorporated into the Declarations for purposes of Agreed Value, the Location Schedule does not show that the Agreed Value optional coverage is applicable. Accordingly, there is no ambiguity and the Agreed Value provision does not apply.

Furthermore, Bachelor's argument that the Coinsurance penalty is not triggered because the predetermined agreed value of the property is $12,000,000 is erroneous. Neither the terms of the Location Schedule nor the terms of the OLLE states that the value of the property itself is $12 million. Instead, the value of the insurance policy or its limits of liability is $12 million. It does not follow that because the premises are insured for $12 million that the value of the

premises is $12 million as well. Accordingly, the Agreed Value provision does not preclude application of the Coinsurance penalty to Bachelor's loss.

## CONCLUSION

For the foregoing reasons, the Court finds as follows:

1) Based on the plain language of the Appraisal provision and the Court's determination that the appraisers did not exceed their authority, the parties are bound by the Appraisal Award. Accordingly, the actual cash value of the covered property is $15,839,134.52 and the actual cash value of the loss is $1,195,642.95.

2) The Coinsurance provision is incorporated into the Policy and is applicable to Bachelor's loss because the actual cash value of the Covered Property at the time of loss, as determined by the Appraisal Award, times the coinsurance percentage of 100% exceeds the $12 million limit of insurance.

Accordingly, Plaintiff's Motion for Summary Judgment (DN 10) is DENIED and Defendant's Motion for Summary Judgment (DN 11) is GRANTED.